Harper, J.
I think the sale by the sheriff to the defendant, Meng, must be regarded as fraudulent so far as the defendant Jefferson L. Edmonds was concerned. The land was sold 'subject to a mortgage on *200 which $604 were due. It was bid off at $920. The price then bid for it was, in effect, $1524. Edmonds however gave his receipt for $191 26§, and I think must be regarded as having paid so much of the price out of his own funds, and that it was to this extent a voluntary conveyance for the benefit of his family. It is true that Edmonds states in his answer, that he and the bidders at the sale were under the impression that the mortgage was to be paid off out of the proceeds of the sale, and that though he gave his receipt, the amount was in fact paid by the trustee Nance; but the answer of Edmonds is no evidence for this purpose; there is no charge on the subject in the bill. He himself knew of the mortgage; Meng was his agent for making the purchase, and must be regarded as having had notice, and the conclusion of law is, that he purchased only the equity of redemption, as we term it — in fact, the legal estate remaining in the mortgagor, taking the land still subject to the mortgage. But if we were to take the statement of Edmonds for granted, there still remains a portion of the price which he must be regarded as having paid. His receipt to Meng was for $191 26f; the amount due on the mortgage was $604 ; there was theu $184 26 for which he voluntarily gave his receipt. If he had actually received the $191 26, it might have been applied to the benefit of creditors, and it was a fraud on them that so much of his property should be applied to benefit his family, and in effect himself. Other circumstances seem to indicate that he wished his family to obtain an undue advantage at the expence of creditors. If he could have enforced his contract with Clarke, (and there is no clear evidence to show; that he could-not) it would have been a much more advantageous sale than that which was effected, *and he seems to have misrepresented to Meng the purpose for which he wished him to bid off the land. It is possible he may have intended fairly ; but the law draws a different conclusion from the circumstances; and though neither the trustee nor his cestui que trust, Mrs. Edmonds, may have had any accession to the fraud, they are not allowed to keep an advantage gained by the fraud of another. Huguenin v. Basely, 14 Ves. 273.
It is not alleged on any hand, that either Nance or his cestui que trust have any accession to the fraud. The trustee purchased bona fide, and for valuable consideration, for he paid off the mortgage. He may have supposed that the land had been bid off for a nominal price, and that the amount of the mortgage was the only consideration to be paid. In general, the title of a bona fide purchaser for valuable consideration without notice of fraud, is good both in law and equity; but in this case I am of opinion that though the title of the trustee was good at law, and therefore the complainant took nothing by his purchase at sheriff’s sale, yet it must be set aside in equity, though allowed to stand as' a security for what has actually been paid. In the case of Smith v. Henry, 1 Hill, 26, decided at the last sitting in this place, we recognised the general principle, that the fraud of the grantor alone is sufficient to vitiate a conveyance; and, as I have said, the fraud of a third person in procuring a conveyance, may vitiate; but in neither of these instances, is such construction to be made, as will render innocent third persons sufferers. In general, if a purchase be made bona fide, and for valuable consideration, the Court will not look to the adequacy of the consideration But here, as I have said, the whole of the consideration was not paid by the trustee; part of it was *201 paid by Edmonds ; though, for aught that appears, without the trustee’s knowledge. If an insolvent having saved a thousand dollars in money from the wreck of his fortune, should go to a third person and say “ if you will sell to my wife’s trustee a tract of land worth $2,000 for $1,000, I will privately make up the difference,” it is plain the transaction could not stand. Otherwise there would be no restraint on fraud. But the grantees *being themselves innocent, are not to be made sufferers. The ends of justice can only be answered by setting aside the sale, allowing the property to stand as a security for what was actually paid. But the sale was good at law. The purchaser having paid a valuable consideration, bona fide, could not be affected at law; the jury must find the deed good or bad, and could not decree that it should be avoided, on the repayment of what had been advanced. This is an answer to the question of jurisdiction, which has been raised in the case. The complainant would have had no relief at law.
In several English cases, even where the defendant appears to have been a partaker of the fraud, but the proof was not entirely clear, the Court has set aside the conveyance, decreeing it to stand as a security for the money actually paid. Herne v. Meeres, 1 Vern. 465, was a case of this sort. The Chancellor says “ aud .so at law, where a case is found to be fraudulent, the creditor comes in and avoids it all, without repayment of any consideration money; and in Equity, therefore, where the Court can decree back the principal and interest, there is no hurt done; and a lesser matter in such case, will serve to set a conveyance aside.” Addison v. Dawson, 2 Vern. 678, and Clarkson v. Hanway, 2 Pr. Wms. 203, were cases in which upon setting aside the conveyance, the Court decreed the defendants to be refunded what they had actually paid. In Boyd v. Dunlap, 1 Johns. Ch. Ca. 478, where the consideration was very inadequate, but the proof of actual fraud in the defendant doubtful, the Court set aside the conveyance, allowing it to stand as a security for the money actually paid. Chancellor Kent, says “ Courts of law can hold no middle course. The entire claim of each party must rest and be determined at law, on the single point of the validity of the deed ; but it is an ordinary case in this Court, that a deed, though not absolutely void, yet if obtained under inequitable circumstances, should stand as a security for the sum really due.” In How v. Weldon, 2 Ves. 516, though there was actual fraud, dolus in re ipsa, as the master of the rolls expresses it, the deed was allowed to stand as a security for the money paid. I * think, however, that our Court of Equity was right in determining, in the case of Miller v. Tolleson, State Eq. Rep. 145, that where the defendant was a partaker of the fraud, he should not be allowed to derive any advantage from the conveyance ; and therefore, where it was made to secure a previous debt, it should be set aside absolutely.
The conveyance being good at law, the complainant took nothing by his purchase at sheriff’s sale. Creditors had an equity to set the conveyance aside ; bat if.it had been the defendant’s equity, it was not a subject of levy and sale by the sheriff. He can only sustain his bill as a creditor, and we understand there are other creditors who have a legal priority over him, of which we are not authorized to deprive them.
In addition to what I have said on the subject of jurisdiction, it may be observed, that although the rule be that the title to freehold shall not *202 be tried in this Court, yet the Court has jurisdiction of fraud ; and nothing is more common than that parties should come into this Court to set aside a fraudulent deed, preparatory to a trial at law. This is an application to set aside a fraudulent deed. If that deed were out of the way, there is no dispute about title — both parties concur in the title of Ed-monds, and claim under him.
In addition to the money paid on the mortgage, I think the land must stand as a security for the money advanced by Mrs. Wadlington towards the purchase. She states positively that she did advance this money, intending it as a gratuity to her daughter, and I see nothing in the evidence to contradict her. She states indeed that she advanced $200 ; but it does not appear that Edmonds applied more than $128,73j towards the purchase. These sums, however, must be reimbursed without interest; Mrs. Edmonds having received the rents and profits of the land.
With respect to the question, whether the conveyance to Nance is not a marriage settlement, and therefore void for want of recording, I cannot see liow it can be regarded as such a settlement. The former decree of the Court was intended to carry the will into effect, and as observed* by the Chancellor, a will is not a marriage settlement. The deed is not supported by the marriage consideration, nor by the wife’s equity which results from the marriage, as in the case of Price v. White. If we should regard every conveyance of a husband to the use of his wife, as a marriage settlement, this would not come under that description. In legal contemplation, it was a purchase from a third person by a trustee, for the use of his cestui que trust. The conveyance to Meng was certainly not a marriage settlement. The same transaction might have happened, though Mrs. Edmonds had been unmarried, and Jefferson L. Edmonds a stranger to her.
As there are older judgments against Edmonds than that of complainant, and as it may be that he has been prosecuting for the benefit of others, and will derive no advantage from the decree, it would, in that event, be inequitable, if other creditors should obtain benefit from the decree, that he should be charged with costs.
It is therefore ordered and decreed, that the decree of the Chancellor be reversed ; that the land in question be sold by the Commissioner, and that out of the proceeds he pay, in the first instance, the sum of $732.13 to the defendant, Robert L. Nance, as trustee, and the surplus to the creditors of the defendant, Jefferson L. Edmonds, according to their legal priorities ; and that he advertise for creditors to come in and establish their demands. Parties to pay their own costs ; provided, that if there be a surplus received by creditors, the complainant’s costs shall be paid by the creditors so receiving, in proportion to the sums received by them respectively.
Johnson, J., concurred.
O’Neall, J., having been of counsel in this ease, gave no opinion.